UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS CHRISTOPHER GROUP,
INC.

    Plaintiff,

v.                                                                                     CASE NO.: 8:15-CV-992-T-17EAJ

RUBEN MORENO,
CHRISTOPHER RIOS, and
NANCY ESTEP,

    Defendants.
_____/

## ORDER GRANTING DEFENDANT RUBEN MORENO AND DEFENDANT CHRISTOPHER RIOS' MOTION TO DISMISS/ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT

This matter comes to the Court pursuant to Defendants', RUBEN MORENO and CHRISTOPHER RIOS ("Defendants"), Motion to Dismiss or in the Alternative Motion for More Definite Statement, (Doc. # 6), filed May 21, 2015, and Plaintiff's Response in Opposition, (Doc. # 11), filed June 5, 2015. For the reasons that follow below, Defendants' Motion is **GRANTED**.

## LEGAL STANDARD

"A factual challenge that an extrinsic document (such as an arbitration agreement) deprives the Court of its power to hear a claim may be raised in a Rule 12(b)(1) motion." *Walker v. Magic Burger, LLC*, No. 6:14-CV-1751-ORL, 2015 WL 500909, at *1 (M.D. Fla. Feb. 5, 2015). Under the Federal Arbitration Act ("FAA"), a court is required to "either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b)

1

the claims before the court will fall within the scope of that agreement." *See Lambert v. Austin Industries*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2–4). Under contract law, "[a] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *See Perera v. H & R Block E. Enterprises, Inc.*, 914 F. Supp. 2d 1284, 1287 (S.D. Fla. 2012) (citing *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986)). The party seeking to avoid arbitration must deny the agreement to arbitrate was made and offer evidence to substantiate the denial. *See Perera v. H & R Block Eastern Enterprises, Inc.*, 914 F.Supp.2d 1284, 1287 (S.D. Fla. 2012) (citing *Wheat, First Security, Inc. v. Green*, 993 F.2d 814, 817 (11th Cir.1993)).

## BACKGROUND

Plaintiff is a corporation specializing in the search and recruitment of corporate executives, and has developed several systems to perform these services: Christopher Business Systems ("CBS 5.0"), Christopher People Systems ("CPS"), Christopher Marketing Systems ("CMS"), Christopher Accounting Systems ("CAS"), and Christopher Facilities Systems ("CFS"). (Doc. # 1). Plaintiff also developed a confidential database ("Candidate Warehouse") of established executive candidates. (Doc. # 1). Sometime between August and September of 2006, Plaintiff employed Defendant Ruben Moreno, and sometime between August and October of 2009, Plaintiff employed Defendant Christopher Rios, as executive recruiters. (Doc. # 1). Plaintiff hired Defendant Ruben Moreno who was a recently convicted felon who pled guilty to defrauding AutoNation and AOL through wire fraud. (Doc. # 1).

In the initial stages of their respective employments, Defendants entered into Employment and Non-Disclosure Agreements with Plaintiff. (Doc. # 1). The Agreements contained restrictive covenants:

> (a) [T]hat for a period of one (1) year after termination of his employment with TCG [Defendants] would not own, maintain, engage in, be employed by, be contracted by, or have a financial interested in any business that offers recruiting, executive recruiting, employment search or job placement services; (b) that after termination of his employment with TCG [Defendants] would not contact, solicit or conduct business with any customer or client of TCG; and (c) that after termination of [Defendants] employment with TCG [Defendants] would not contact, solicit or conduct business with any candidate of TCG.

(Doc. # 1). Defendants and Plaintiff also entered into an arbitration agreement:

> All controversies, claims, disputes and matters in question arising out of, or relating to, the employment of the Employee by the Company or the termination of such employment, or the Employee's Employment Agreement, or breach thereof, or the relations between the parties, arising either during or after the employment relationship, shall be decided by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . The arbitration shall take place in the city in which the Company's Office is then located, and shall be governed by the laws of this State.

(Docs. ## 6-2, 6-3). On September 13, 2013, Defendants resigned; their last day with Plaintiff was on October 11, 2013. (Doc. # 1). According to Plaintiff, on or about September 17, 2013, Defendant Ruben Moreno and Nancy Estep formed Sterling Global Executive Search, LLC, a company engaged in executive searches and recruiting. (Doc. # 1).

## DISCUSSION

In reviewing the instant Motion, the Court must: first, determine whether there is a valid arbitration agreement; and second, determine whether the claims are arbitrable. *See Perera v. H & R Block E. Enterprises, Inc.*, 914 F. Supp. 2d 1284, 1287 (S.D. Fla. 2012). If the disputed claims are arbitrable, the Court must either stay or dismiss the case and compel arbitration. *See Lambert v. Austin Industries*, 544 F.3d 1192, 1195 (11th Cir. 2011).

### I. Plaintiff's Arbitration Agreement is Enforceable

"Under ordinary contract law, an arbitration agreement is enforceable if it meets the applicable state's requirements of a validly formed contract—e.g. offer, acceptance, consideration—and the terms are not unconscionable." *See Perrera*, 914 F. Supp. 2d at 1287 (citing *Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985); *Caley v. Gulfstream Aerospace Corporation*, 428 F.3d 1359, 1368 (11th Cir. 2005)). Plaintiff does not dispute the existence of a valid and enforceable arbitration agreement, but rather disputes the scope of the arbitration clause. (Doc. # 11).

### II. Each of Plaintiff's Claims are Subject to Arbitration

"As a matter of contract law, the scope of an arbitration agreement depends on the intent of the parties." *See Perera*, 914 F. Supp. 2d at 1287–88 (citing *Seaboard Coast Line R.R. v. Trailer Train Co.*, 690 F.2d 1343, 1352 (11th Cir.1982); *Seifert v. U.S. Home Corp.*, 750 So.2d 633, 636 (Fla. 1999)). "[W]here . . . parties concede that they have agreed to arbitrate some matters pursuant to an arbitration clause, the law's permissive policies in respect to arbitration counsel that any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 298 (2010) (internal quotation marks and citations omitted). "The FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from their arbitration agreement." *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998) (citations omitted).

In this case, the plain language of the Arbitration Agreement is very broad:

> *All* controversies, claims, disputes and matters in question arising out of, or relating to, the employment of the Employee by the Company or the termination of such employment, *or the Employee's Employment Agreement*, or breach thereof, *or the*

> *relations between the parties,* arising either during or after the employment relationship, shall be decided by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . .

(Docs. ## 6-2, 6-3) (emphasis added). Plaintiff agreed to arbitrate "[a]ll . . . claims . . . arising out of, or relating to . . . the relations between parties. . . arising either during or after the employment relationship . . . ." Defendants argue the arbitration agreement covers "all claims and disputes between the parties." (Doc. # 6). The Court disagrees. The arbitrable claims and disputes are limited by the employment relationship. We agree with Plaintiff that the language in the agreement "cannot mean that 'all claims' between the parties are subject to arbitration . . . ." (Doc. # 11).

However, the Court finds the arbitration clause broad enough to cover Plaintiff's three claims. Counts I, II, and III arise out of, or relate to, the relations between the parties during and after the employment relationship—all claims result from Defendants leaving Plaintiff to work for a competitor: Count I: Violation of Racketeer Influenced and Corrupt Organizations Act (RICO): "TCG's damages are therefore a direct and proximate result of the investment and/or use of the embezzled funds in the creation and/or operation of Sterling. . . ."; Count II: Violation of Racketeer Influenced and Corrupt Organizations Act (RICO): "As a direct and proximate result of Rios's and Estep's conspiring with Moreno [to steal Plaintiff's operating systems and confidential databases entrusted to Defendants during employment], TCG has suffered damage. . . ." Count III: Violation of Computer Fraud and Abuse Act

(CFAA): "As a direct and proximate result of Defendants' actions [destruction of information on company owned laptops], TCG has been damaged." (Doc. # 1).

The Court in the Eleventh Circuit has stated "arising out of," as used in an arbitration agreement, requires a "direct relationship" between the claim and the duties specified by the contract. *See Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1219 (11th Cir. 2011) (deciding there was no direct relation between the dispute and the employer's contract because "[t]he cruise line could have engaged in that tortious conduct even in the absence of any contractual or employment relationship with [the employee]"). Plaintiff argues there is no direct relation between the RICO or CFAA claims and the arbitration clause, (Doc. # 11), but the Court disagrees. Defendants' access to Plaintiff's electronically stored information is in direct relation to the employer-employee agreement, whereby Plaintiff entrusted Defendants with confidential information in order to carry out employment tasks. In addition, Plaintiff alleges Defendants used embezzled funds to create Sterling, but Plaintiff disregards the hefty income provided to Defendants during their respective employments, which might be in direct relation to the alleged pattern of racketeering and the creation of Sterling, the competitor. At least without Plaintiff's training, Defendants would be unable to create the very executive recruitment company the Employment Agreement sought to avoid. In sum, the RICO and CFAA claims could not have occurred independent of the Agreements.

### III. Dismiss or Stay

"The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Perera v. H & R Block Eastern Enterprises, Inc.*, 914 F. Supp. 2d 1284, 1290 (S.D. Fla. 2012) (citing *Caley v. Gulfstream Aerospace Corp.*, 333 F.Supp.2d 1367, 1379 (N.D. Ga. 2004)). All of Plaintiff's claims are arbitrable, so the Court exercises it's discretion to dismiss the case with prejudice. Alternative Motion for More Definite Statement is moot because Motion to Dismiss is granted. Accordingly, it is

**ORDERED** that Defendants' Motion to Dismiss Counts I, II, and III for lack of subject matter jurisdiction is **GRANTED WITH PREJUDICE** as to Defendant Christopher Rios and Defendant Ruben Moreno who shall be terminated from this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 6th day of July, 2015.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All Counsel and Parties of Record